**SCILKEN v. LEONARD'S CATERING,**
Inc., et al.

No. 220.

Circuit Court of Appeals, Second Circuit.

June 4, 1945.

Morris Kirschstein, of New York City, for plaintiff-appellee.

Eric Y. Munson, of New York City, for defendant-appellant.

Before EVANS and CHASE, Circuit Judges, and HINCKS, District Judge.

EVANS, Circuit Judge.

Plaintiff brought this suit to enjoin the infringement of Claims 1, 2, 7, 9, 10, 13, 16, and 19 of Patent No. 2,248,467, to Joseph Scilken. The court found all of these claims to be valid and infringed and enjoined further infringement of them. It also ordered an accounting of defendant's profits and damages. Defendant does not dispute infringement. It challenges the validity of the patent and all the claims involved.

Set forth in the margin are claims 10, 13, and 16,[1] which are sufficient for this opinion. The other claims are not so materially different as to present separate questions of patentable novelty.

The patent covers "A Refrigerated Display Fixture for Food." In his specifications the inventor says his invention "relates to refrigerated fixtures for the display of perishable goods such as foods, and more particularly to counter and window food display fixtures of the type generally used in self-service restaurants." Its object was to provide fixtures "by which the costly, time and labor consuming and messy use of cracked ice is entirely eliminated"; also "to provide mechanically refrigerated 'cool-counters' and window fixtures * * * which permit effective and convenient disposal of all types of foods, both solid and liquid, both within and without containers or trays and both within and on the surface of the fixture and which maintain such food at uniform and properly chilled temperatures." Specifically mentioned is the objective "to provide mechanically refrigerated fixtures of the character described in which food containing trays may be disposed and arranged and be properly chilled on all sides" and to provide "mechanically refrigerated fixtures of the character described in which fruits, melons and similar circular objects may be displayed and effectively chilled."

Defining the combination the inventor said:

"The display fixture may be constructed of units consisting of cooling plates, each of which may comprise a pair of flat sheets or walls separated by elements to form ducts or conduits for the passage of vaporized refrigerant. In one illustrated embodiment, the cool plates have their spacing elements formed by pressing out continuous portions of one of the plates, along the center part and the edges thereof, and welding the two plates together along the pressed out portions thus forming continuous spaces or ducts."

Scilken was a salesman and had sold refrigerated equipment for ice boxes, ice cream cabinets and the like. He conceived the idea, so he states, of employing cool plates to solve the problem of ice packed cool counters. He welded a number of cool plates together into an open bottom structure comprising a top for the food to be cooled on, and front, rear and end walls to support the top and to arrange all of these plates in such a manner that the passages would be connected in series and the refrigerating medium thus made to flow continuously through the top and side and end walls. This combination, so he asserts, produced a frost over the whole fixture giving the same a cool appearance and, in addition, uniformly cooled the space enclosed by the top, side, and end walls. Accompanying drawings are not helpful. They seem to be made with the purpose of making a rather simple structure, difficult, forbidding and awesome.

■■■ As an approach to our study of the patent, we accept plaintiff's contentions, upon which he builds his argument in favor of the validity of his patent, namely: (a) A patentable combination may be disclosed even though all elements are old. (b) Utility is not necessarily limited to greater efficiency or to a lowered cost of product of an article. It may be found in the greater appealability of the article to the

---

[1] "10. A refrigerated display fixture of the character described constructed exclusively of heat exchange plates, each having a refrigerant passage therethrough, a plurality of said plates connected edge to edge to form a top portion having openings therein and a plurality of said plates connected edge to edge to said top portion to form depending supporting walls therefor, said openings arranged to have a plate on each side thereof, the passages of all of said plates connected to form a continuous refrigerant circulating system."

"13. A cooling surface for a refrigerated display fixture comprising a rigid member formed from superposed sheets connected to one another along portions thereof and spaced from one another along other portions thereof to form a passageway for refrigerant, said member having one or more openings therein constructed to receive objects to be cooled, said passageway arranged to substantially surround said openings, whereby refrigerant may be circulated about said openings, and side walls cooperating with said surface to form a refrigerated space into which the object received in said openings may project."

"16. A refrigerated fixture of the character described, comprising a hollow body having a top section and depending side sections adapted to support the top section, said sections including heat exchange plates, each having a refrigerant passageway therethrough, said passageways connected to one another to form a continuous refrigerant passage."

eye. (c) The best test of patentable novelty, when a doubtful case is presented, is to be found in the verdict of the users. The prompt and extensive acceptance of the new article by users, unless attributable to other causes, furnishes persuasive evidence that there was a want which would have been filled earlier, had the mechanic been able to supply a product which would meet such demand. It must have required something more than the skill which a skilled mechanic possessed, otherwise the demand would have been met.

■ We may also add that patentable novelty may not be properly appraised solely by the extent of mechanical ingenuity displayed by him who offers a solution. Division among judges often grows out of the difference in the stance of the viewer. The object appears vastly different to the rear viewpoint observer than to him who viewed the problem before its solution.

■ Notwithstanding our ready acceptance of the foregoing, we find plaintiff confronted by the prior art,[2] also by difficulty in getting his patent into the doubtful class, and also by the insertion of claims which must be condemned as too broad. Claim 16 is an illustration. Its. rejection would bar plaintiff's right to judicial protection of the other claims, if they were found to be valid, until a disclaimer of claim 16 was made. Unfortunately one may invent and lose his invention by failure to claim. He likewise may seek too much dominance of the art through too broad claims and lose all. Likewise he may, as did the plaintiff here, seek and secure a patent upon a combination when if he had anything to protect by patent grant, it was a design.

Turning now to a study of the claims, we find plaintiff took evaporator plates (which were old) and put them together so as to form a box—or a table—upon which food, in or out of trays, could be placed. He has taken a small evaporator plate and made a larger one through the use of a plurality of the smaller ones. He made side walls and a top out of evaporator plates. He has connected the plates so that the refrigerant flows in a continuous circuit from one plate to the other. The evaporator plate and the means for conducting the refrigerant through or about it, are both old, and have been so extensively used that neither novelty in their use or originality in their selection can be, or is, asserted.

A prior patent to Battista, No. 1,896,693, dated Feb. 7, 1933, supplies a stubborn argument against plaintiff's claim to patentable novelty. It covered a refrigerated display service, and its claim 1 reads:

"In a display counter of the character described having glass side walls, a pair of transparent shelves supported in spaced relation between the walls of the counter, said shelves being formed with a passageway extending therethrough, and means connecting the passageways of each shelf to form a continuous circuit for circulating a refrigerating medium through the passageways of the shelves."

Another patent was issued to Gray, No. 1,932,694. There are 13 claims and supporting. disclosures in the specifications. The invention is described in claim 1 as follows:

"A refrigerator display case comprising in combination a rectangular lower section for holding refrigerating medium, a display section above the lower section, and removable pans in longitudinal arrangement supported in normal position along the upper portion of the lower section so as to provide in effect a partition between the refrigerating section, and the refrigerating medium therein, to which the pans are directly exposed, on the one hand, and the display section on the other hand, the front of the display section having fixed glass whereby commodities on display within the section can be seen from the front, the back of the display section having slidable doors with glass therein providing closures for the openings that permit access to the interior of the display section, said lower section being divided into a plurality of brine receiving compartments, each having a cooling coil, said display case having in operative arrangement therewith refrigerating means comprising a compressor and a condenser constituting part of a refrigerating system that includes the cooling coils, there being piping leading from the compressor with valve controlled branches leading to each coil, there being

---

2 Patent No. 2,156,544 to Raskin '36, A Plate for Refrigerator System. Patent No. 1,433,157 to Schwimmer, '18, Warming Table. Patent No. 2,244,475 to Raskin '41, Evaporator Plate for Refrigerated Cabinets. No. 1,932,694 to Gray, Refrigerator Display Case. Patent No. 1,896,693 to Battista, Refrigerator Display Device.

branches leading from each coil and constituting part of return piping leading to the compressor."

If there be any novelty of a patentable character in plaintiff's structure, it must, we think, be found in the spaced openings for food trays. This was the novelty stressed by plaintiff throughout the trial, and counsel says in his brief, "What Scilken had in mind was to make the top of sections comprising cool plates so arranged and spaced as to leave openings for the food trays which would then extend into the cooled space beneath the top. * * * The Food Mart installation is the first commercial embodiment of the patent."

The spaced openings were provided for the food trays. Claim 16 does not include this. While claims 10 and 13 provide for openings in the top plates, no such structure of the plate is to be found in claim 16. However, we are convinced that the insertion of openings therein (meaning the top plates) was a mechanical problem which was solved by one Raskin, almost immediately upon its being presented to him.

The evidence shows that it did not involve inventive genius to solve it and neither can plaintiff be credited with its solution. There is in fact great doubt as to who the real inventor in this case was, assuming there was a patentable disclosure. We have passed that question, however, and base our decision upon our conclusion, which we reach from all the evidence, namely, that the claims involved in this suit are invalid for want of patentable invention.

The decree is reversed with directions to dismiss the complaint.